## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

JANE ROE,

                    Plaintiff,

v.                                      CIVIL ACTION NO.   3:22-0532

MARSHALL UNIVERSITY
BOARD OF GOVERNORS,

                    Defendant.

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's Motion to Dismiss. ECF No. 6. For the following

reasons, the Motion is **DENIED**.

### I. BACKGROUND

Plaintiff Jane Roe is a twenty-year-old junior at Marshall University. Compl. ¶ 6, ECF No.

1. Defendant Marshall University Board of Governors ("Marshall") is the governing body which

governs Marshall University, a West Virginia institute of higher education located in Huntington,

West Virginia. *Id*. ¶ 7. As an institution which receives federal funding, Marshall has an Office of

Equity Programs, with a Title IX Coordinator, which is responsible for handling student

complaints of sexual harassment and assault. *Id*. ¶ 8.

On September 3, 2022, Ms. Roe was alleged violently sexually assaulted by fellow

Marshall student John Doe. *Id*. ¶¶ 12-14. At the time of the assault, Ms. Roe and Mr. Doe were

watching a Marshall football game at a friend's off-campus apartment. *Id*. ¶ 12. Ms. Roe reported

the assault to the Huntington Police Department, and Mr. Doe was arrested and charged. *Id*. ¶¶ 15-16.

The Complaint asserts that the Huntington Police Department "sent its report of the September 3, 2022 incident to Marshall University, which referred the matter to the Title IX Office and the Office of Student Conduct." *Id*. ¶ 18. Thereafter, Ms. Roe avers that she was lured into meetings with Michaela Arthur, the Assistant Director of Student Conduct at Marshall University, under the guise of providing "witness" information concerning the sexual assault. *Id*. ¶¶ 19-22. Believing that she was providing testimony concerning the sexual assault, Ms. Roe provided Ms. Arthur with an array of information concerning the incident. *Id*. ¶¶ 22-27. Ms. Roe asserts that she was not represented by counsel at these meetings, was not informed of her right to counsel, and was not told that *she* was the subject of the investigation, rather than Mr. Doe. *Id*. ¶¶ 21-22, 25-28.

In a meeting on October 24, 2022, Ms. Arthur purportedly informed Ms. Doe that she was being charged with violating Marshall's policy against underaged drinking. *Id*. ¶ 31. Again, Ms. Doe was apparently not informed of her right to counsel. *Id*. ¶ 32. Rather, she was allegedly pressured to accept a "voluntary resolution" of probation, in exchange for waiving her rights to future proceedings, without being informed of the adverse consequences of accepting such a resolution. *Id*. ¶¶ 33-35. After accepting the voluntary resolution under pressure, Ms. Roe was given a probationary status which she will be required to disclose for seven years to any future educational institutions. *Id*. ¶¶ 36-39.

While Ms. Roe was allegedly penalized for discussing the sexual assault, in contrast, the Complaint asserts that Mr. Doe remains a student at Marshall. *Id*. ¶¶ 40, 47. The Complaint asserts that Marshall's Title IX office declined to open an investigation into Mr. Doe, despite having actual knowledge of the incident. *Id*. ¶¶ 40-44. Ms. Roe believes that this is due to Marshall's position

that "the Title IX Office did not have jurisdiction over the incident solely because it occurred off campus." *Id*. ¶ 45. Ms. Roe's counsel has repeatedly requested records and information concerning the incident from Marshall's Title IX Coordinator, Debra Hart, and has yet to receive a response from Marshall or Ms. Hart. *Id*. ¶ 46.

Accordingly, Ms. Roe has brought suit under Title IX of the Education Amendments of 1972. *See* 20 U.S.C. §§ 1681–1688. Her one-count Complaint alleges Marshall's deliberate indifference towards its obligations to her under Title IX to investigate the assault. *Id*. ¶¶ 49-63. On December 13, 2022, Defendant filed the instant Motion to Dismiss. ECF No. 6. The matter has been fully briefed, *see* ECF Nos. 11-13, and is now ripe for resolution.

## II. LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing [the plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). While the facts alleged in the complaint need not be probable, the statement must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In considering the plausibility of a plaintiff's claim, the Court accepts all factual allegations in the complaint as true. *Id.* Still, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted).

Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. If

the court finds from its analysis that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" *Id*. (quoting, in part, Fed. R. Civ. P. 8(a)(2)). Nonetheless, a plaintiff need not show that success is probable to withstand a motion to dismiss. *Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.").

## III. DISCUSSION

The instant Motion presents a very narrow issue to the Court: whether a plaintiff can have plausibly alleged a Title IX deliberate indifference claim against a university where the alleged act of student-on-student sexual harassment occurred in a location over which the university did not exercise control. For the reasons articulated below, the Court finds that Plaintiff has plausibly alleged an incident of sexual harassment [1] over which Marshall University could have had "substantial control" over the students, the context, and the circumstances in which the sexual harassment occurred, regardless of the location of the incident.

Title IX provides that "no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). The Supreme Court has held that Title IX authorizes private suits for damages in certain circumstances. *See Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 76 (1992); *see also Cannon v. Univ. of Chi.*, 441 U.S. 677, 717 (1979). The Court has also found "deliberate indifference" claims alleging

---

[1] The Court uses the term "harassment" and "harasser" throughout to comport with the language of Title IX. The Court does not intend to imply the assault described by Ms. Roe was mere "harassment" in the colloquial sense.

liability for institutional inaction regarding student-on-student harassment to be cognizable under Title IX. *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 653-54 (1999).

> To state a deliberate indifference claim under Title IX, Ms. Roe must show that
>
> (1) she was a student at an educational institution receiving federal funds, (2) she was subjected to harassment based on her sex, (3) the harassment was sufficiently severe or pervasive to create a hostile (or abusive) environment in an educational program or activity, and (4) there is a basis for imputing liability to the institution.
>
> *Jennings v. Univ. of N.C.*, 482 F.3d 686, 995 (4th Cir. 2007).

Marshall only contests the final element of this standard, arguing that there is no basis for imputing liability against it, due to the off-campus location where the alleged incident of sexual harassment occurred. Mem. of Law in Supp. of Mot. to Dismiss at 5. An educational institution's liability is limited to "to circumstances wherein the recipient exercises substantial control over both the harasser and the context in which the known harassment occurs." *Davis*, 526 U.S. at 645. Further, *Davis* held that "recipients of federal funding may be liable for 'subjecting' their students to discrimination where the recipient is deliberately indifferent to known acts of student-on-student sexual harassment and the harasser is under the school's disciplinary authority." *Id*. at 646-47. The Supreme Court's language has been read by at least one circuit court as requiring a sufficient "nexus between the out-of-school conduct and the school." *Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1122 n.1 (10th Cir. 2008) (citing *Davis*, 526 U.S. at 645).

Marshall does not refute Ms. Roe's argument that both students were under the school's "disciplinary authority" at the time the sexual assault occurred, or that Marshall exercised substantial control over the harasser. *See* Reply to Pl.'s Resp. to Def.'s Mot. to Dismiss at 3-4. The Court therefore finds that the parties only dispute whether the control over the context in which the known harassment occurs requires control over the location in which the incident occurred.

Accordingly, the Court begins its analysis with an examination of the plain meaning of the relevant regulatory language. *See Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019).

> A recipient with actual knowledge of sexual harassment in an education program or activity of the recipient against a person in the United States, must respond promptly in a manner that is not deliberately indifferent … "education program or activity" includes locations, events, or circumstances over which the recipient exercised substantial control over both the respondent and the context in which the sexual harassment occurs, and also includes any building owned or controlled by a student organization that is officially recognized by a postsecondary institution.

34 C.F.R. § 106.44(a).

The Court finds that this language unambiguously fails to limit the "context" over which an institution exercises control to only physical locations. First, the regulatory provision expressly encloses "locations, *events, or circumstances*" within the ambit of "education programs and activities." Second, rather than stating that the recipient must exercise substantial control over both the respondent and the *location* in which the sexual harassment occurs, the regulation employs the word *context* instead. It is an axiomatic that "differences in language like this convey differences in meaning." *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 86 (2017); *In re Graham*, 61 F.4th 433, 439-40 (4th Cir. 2023). Further, courts are counseled against "ascribing to one word a meaning so broad that it assumes the same meaning as another statutory term." *Ysleta Del Sur Pueblo v. Texas*, 142 S. Ct. 1929, 1939 (2022) (internal quotation omitted). Accordingly, the Court concludes that under the plain language of § 106.44(a), a plaintiff may bring a Title IX deliberate indifference claim alleging an institution's substantial control over the context of an incident premised upon the events or circumstances of that incident, regardless of the location at which the sexual harassment occurred. This interpretation accords with courts that have held educational institutions liable under Title IX for conduct which occurred off-campus, where those institutions exhibited substantial control over the context of the incident and over the students involved. *See,*

*e.g.*, *Simpson v. Univ. of Colo. Boulder*, 500 F.3d 1170 (10th Cir. 2007) (reversing summary judgment on appeal where a student was sexually assaulted in her apartment).

In contesting that it exercised substantial control over the context of the sexual harassment, Marshall exhibits a myopic focus on the location of the incident. Marshall repeatedly emphasizes that the assault took place in "a random off-campus apartment." Reply to Pl.'s Resp. to Def.'s Mot. to Dismiss at 4-5. Apparently, Marshall fails to grasp Ms. Roe's argument: that the University exhibited substantial control over the *events or circumstances* of the incident, rather than the locale at which it occurred. *See* Compl. ¶¶ 56-57.

In fact, several of the cases cited by Marshall for the proposition that they are not liable for peer harassment occurring off-campus contain language to the effect that they "do not suggest that harassment occurring off school grounds cannot as a matter of law create liability under Title IX." *Rost*, 511 F.3d at 1121 n.1; *see Horocofsky v. City of Lawrence*, No. 20-2529-EFM, 2022 WL 1421554, at *15 (D. Kan. May 5, 2022), reconsideration denied 2022 WL 2802316 (D. Kan. July 18, 2022); *Samuelson v. Oregon State Univ.*, 162 F. Supp. 3d 1123, 1133-34 (D. Or. 2016), aff'd, 725 F. App'x 598 (9th Cir. 2018); *Doe v. Univ. of Scranton*, No. 3:19-CV-01486, 2020 WL 5993766, at *8-9 (M.D. Pa. Oct. 9, 2020). Instead, these cases analyzed the off-campus incidents of harassment and found that the particular circumstances indicated the institutions did not have substantial control over the context of the harassment—and several of the cases did so at the summary judgment stage, after discovery had been conducted into the level of control the institutions exercised. *See Rost*, 511 F.3d at 1121-24; *Horocofsky*, 2022 WL 1421554, at *15 (finding no substantial control where plaintiff alleged serving of alcohol at university function and university non-cooperation with the police was sufficient); *O'Shea v. Augustana College*, 593 F. Supp. 3d 838, 847 (C.D. Ill. 2022) (finding no substantial control where harassment took place off

campus and the assailant *was not a student* at the time of the incident); *Samuelson*, 162 F. Supp. 3d at 1134 (same; emphasizing that the university "had no connection at all to Ms. Samuelson's rapist."); *see also Scranton*, 2020 WL 5993766, at *8-9 (granting plaintiff leave to amend complaint to clarify the university's relationship to student housing). Finally, some cases cited by Defendant actually held that institutions had substantial control over off-campus incidents of sexual harassment. *See Wreckhorst v. Kansas State Univ.*, 241 F. Supp. 3d 1154, 1167-68 (D. Kan. 2017) (involving harassment at a private fraternity house); *Simpson*, 500 F.3d at 1178-85 (involving harassment at a private apartment).

In opposition, Ms. Roe cites to a variety of cases in which plaintiffs plausibly alleged Title IX deliberate indifference claims where incidents of harassment occurred off-campus. *See* Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss at 6; *Simpson*, 500 F.3d at 1177; *Aubert v. Cent. N.M. Cmty. Coll.*, No. 18-CV-0118-WJ-LF, 2019 WL 1239435, at *7 (D.N.M. Mar. 18, 2019) (finding a nexus between the off-campus harassment and the institution where plaintiff alleged an employee accessed her institutional profile and threatened her); *Butters v. James Madison Univ.*, 145 F. Supp. 3d 610 (W.D. Va. 2015) (finding plausibly alleged control over off-campus harassment where the institution failed to act in response to video of assault); *DeGroote v. Ariz. Bd. of Regents*, No. CV-18-00310-PHX-SRB, 2020 WL 10357074, at *8-9 (D. Ariz. Feb. 7, 2020) (finding plausibly alleged control over off-campus harassment where the institution failed to act in response to teammate report); *Rex v. W. Va. Sch. of Osteopathic Medicine*, 119 F. Supp. 3d 542, 551 (S.D.W. Va. 2015) (finding plausibly alleged control over off-campus harassment where the institution's investigation was biased in favor of the harasser).

Upon consideration of these holdings and the regulatory language, it is clear that plaintiffs may plausibly allege Title IX deliberate indifference claims where an incident of student-on-

-8-

student sexual harassment occurred off-campus, if the events or circumstances give rise to the plausible inference that the institution exhibited substantial control over the context of the incident. Turning to the allegations here, the Court first notes that Ms. Roe is not seeking to hold Marshall liable for the assault itself, nor has she alleged that Marshall made her vulnerable to that assault. Rather, the Court reads Ms. Roe's Complaint to seek imposition of liability upon Marshall for its allegedly inadequate response to actual knowledge of the assault. *See* Compl. ¶¶ 58, 60-62.

This distinction distinguishes the only case cited by Marshall finding that the institution involved lacked the substantial control necessary to support a deliberate indifference claim where it could discipline students but did not control the physical location of the incident of sexual harassment. *See Doe v. Univ. of Missouri*, No. 19-cv-04229-NKL, 2022 WL 4043458, at *15 (W.D. Mo. Aug. 30, 2022). In *University of Missouri*, the court found the university was not deliberately indifferent due to its lack of control of the context of the harassment, but only to the extent that plaintiffs were alleging the university should have intervened earlier; a plaintiff in *University of Missouri* successfully pursued a deliberate indifference claim against the university on additional grounds. *Id.* at *15-21. In contrast, Ms. Roe is alleging Marshall's deliberate indifference in failing to pursue an investigation against Mr. Doe; in fact, this is similar to the theory a plaintiff prevailed on in *University of Missouri*. *See* 2022 WL 4043458, at *15-21; Compl. ¶ 58. Additionally, the Court notes that the *University of Missouri* opinion deals with a motion for summary judgment.

Here, while the sexual assault of Ms. Roe took place off-campus, Marshall was allegedly quick to investigate and impose discipline upon Ms. Roe for her underage drinking in connection with the same incident. Compl. ¶¶ 19-31. At least one other court has found that an institution's disciplinary action against a plaintiff was evidence of the institution's substantial control over the

context of an off-campus incident of sexual harassment. *See S.C. v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 579 F. Supp. 3d 999, 1034 (M.D. Tenn. 2022) ("The school's suspension of S.C., however, was, in fact, an exercise of substantial control over the setting in which she might be harassed."). The Court agrees with Plaintiff that the Complaint therefore plausibly alleges a sufficient nexus between the off-campus assault and Marshall to meet the substantial control of context standard. Drawing all inferences in favor of Plaintiff, Marshall's disciplinary action against Ms. Roe indicates that it could have exercised a corollary amount of control over the context of the incident to investigate the sexual assault.

In support of this inference, the Court finds it notable that Marshall was allegedly independently aware and pursued its investigation of the incident without Ms. Roe reporting it to the University. Compl. ¶¶ 15, 18-19. The Complaint's allegations allow for the Court to plausibly infer that Marshall obtained notice of the incident from the Huntington Police Department: it asserts that Ms. Roe informed the police, and that the university subsequently contacted her regarding the police investigation. *Id*. Furthermore, of the cases cited by the parties, the Court finds that *Butters*[2] and *DeGroote* are most analogous to Ms. Roe's allegations as to Marshall's substantial control over the context of her assault. *See Butters*, 145 F. Supp. 3d 610; *DeGroote*, 2020 WL 10357074. In *Butters*, the plaintiff was sexually assaulted by three fellow students off-campus during a spring break trip to another state. 145 F. Supp. 3d at 613-16. The district court found that the plaintiff had plausibly alleged a deliberate indifference claim against the university, where the university was aware of the assault from a circulating video provided to it but failed to

---

[2] Defendant attempts to distinguish the holding in *Butters* by emphasizing it was decided under an earlier Title IX regulatory scheme. Reply to Pl.'s Resp. to Def.'s Mot. to Dismiss at 5. The Court is not convinced—given its analysis of the current regulatory language above, it finds the holding in *Butters* retains persuasive value.

investigate. *Id.* at 619-20. Likewise, the *DeGroote* Court found the plaintiff plausibly alleged a deliberate indifference claim where the institution had independent knowledge of an off-campus incident of harassment from a fellow student's report but neglected to investigate. 2020 WL 10357074, at *8-9. Here, Ms. Roe alleges an off-campus assault during a football watch party, which Marshall was independently aware of via an apparent relationship with the Huntington Police Department. *See* Compl. ¶¶ 12-13, 15, 18. Accordingly, the Court finds that Complaint plausibly alleges a disciplinary nexus between the context of the incident of sexual harassment and the University which is entirely independent of Ms. Roe.[3]

As a final matter, the Court notes that in its Reply, Marshall has injected a new set of purported facts into Ms. Roe's narrative, which Marshall heavily implies the Court should consider in reaching its decision on this Motion to Dismiss. Reply to Pl.'s Resp. to Def.'s Mot. to Dismiss at 3. For the first time, Marshall asserts that it did investigate Mr. Doe's behavior during the September 3, 2022 incident, via the Office of Student Conduct. *Id.* As the Court finds that these are new arguments and information raised in a reply, it **GRANTS** Ms. Roe's Motion for Leave to File a Surreply. ECF No. 13. Considering the Surreply, the Court agrees with Ms. Roe—when considering a motion to dismiss, the Court must accept the facts alleged in the Complaint as true. *See Iqbal*, 556 U.S. at 687; Pl.'s Surreply in Opp'n to Def.'s Mot. to Dismiss at 2. Accordingly, the Court declines to consider Marshall's arguments as to the legal import of any investigation it may have made into Mr. Doe's behavior. The Complaint alleges that Marshall had ample opportunity to provide information concerning this investigation to Ms. Roe prior to her filing suit,

---

[3] The Court does not intend to imply that if Marshall's knowledge of the incident were only from Ms. Roe, then they could not be found deliberately indifferent. Rather, the fact that Marshall independently learned of and acted upon the incident gives rise to a plausible inference that that they could exercise substantial control over the context of Ms. Roe's sexual harassment.

but that Marshall declined to respond to her information requests. Compl. ¶ 46. Therefore, Marshall must live with the absence of this purported information on the record at this stage in the proceedings.

### IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 6) is **DENIED**. As an ancillary matter, the Court **GRANTS** Plaintiff's Motion for Leave to File a Surreply (ECF No. 13) and **DIRECTS** the Clerk to file Plaintiff's attached Surreply (ECF No 13-1). The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:        April 5, 2023

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE