IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**JANE ROE,**

    **Plaintiff,**

v.                                                       **Case No.: 3:22-cv-00532**

**MARSHALL UNIVERISTY
BOARD OF GOVERNORS,**

    **Defendant.**

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Marshall University Board of Governors' Motion for Protective Order Concerning Deposition of Marshall University President Brad D. Smith, (ECF No. 76). For the reasons that follow, the Court **HOLDS IN ABEYANCE** the motion pending completion of the Fed. R. Civ. P. 30(b)(6) deposition of Defendant.

**I.**     **Relevant Facts**

Plaintiff asserts in her amended complaint that Marshall University refused to investigate her September 3, 2022 sexual assault by her ex-boyfriend, who was a fellow student and referred to in this action as John Doe ("Doe"), that occurred at a "friend's apartment." (ECF No. 34 at 1, 3). Plaintiff filed a police report with the Huntington Police Department, which sent a copy of the report to Marshall University. Marshall University decided within less than 24 hours to close the Title IX investigation into the assault. (*Id*.). Michaela Arthur, Assistant Director of Student Conduct ("Arthur"), contacted Plaintiff on September 7, 2022, about Plaintiff being a "witness" to a possible violation of the Student

Code of Conduct. (*Id.* at 3-4). Plaintiff related the circumstances of the assault to Arthur and informed her that Doe was previously violent toward her and threatened her. (*Id.* at 4). Arthur informed Plaintiff that she was being charged with underage drinking under the Code of Student Conduct. (*Id.* at 5). Arthur further determined that Doe had attacked Plaintiff and was responsible for relationship violence under the Code of Student Conduct. (*Id.* at 6). As punishment, both Plaintiff and Doe were required to complete an alcohol education course, perform community service, and they were placed on probation until December 12, 2022. (*Id.*). Plaintiff's probationary status was documented on her permanent record, and she had to write a "reflection" letter about her conduct. (*Id.* at 5-6). In Count One of the amended complaint, Plaintiff asserts that Defendant violated Title IX, 20 U.S.C. § 1681, by being deliberately indifferent toward unlawful sexual harassment committed upon her by Doe. (*Id.* at 8-9). In Count Two, she asserts that Defendant unlawfully retaliated against her under Title IX for reporting the sexual assault by punishing her and placing her on academic probation. (*Id.* at 11).

## II.     Motion for Protective Order

Defendant seeks a protective order under Fed. R. Civ. P. 26(c) to prohibit Plaintiff from taking the deposition of Marshall University President Brad D. Smith ("Smith"). (ECF No. 76). Defendant argues that the Court should apply the "apex doctrine," which requires a plaintiff seeking to depose a high-ranking officer of a corporate defendant or government official to show that the deponent has unique or special knowledge of the facts at issue and that plaintiff exhausted less burdensome avenues to obtain the information. (*Id.* at 3-4). Defendant cites cases which it contends provide persuasive authority that the apex doctrine precludes Smith's deposition in this case. (*Id.* at 4). According to Defendant, Smith does not possess any relevant information regarding this

2

specific matter and has no knowledge of Plaintiff or her claims. (*Id*. at 5). Defendant argues that written discovery or a Fed. R. Civ. P. 30(b)(6) deposition are less burdensome methods to obtain the sought-after information. (*Id*. at 5-6). Further, Defendant argues that any information that Smith could provide would be duplicative of the testimony of current and former Marshall University employees, including Jessica Rhodes ("Rhodes"), Title IX Coordinator; Debra Hart, former Title IX Coordinator; and Cayden Fraley, Office Manager of the Office of Student Conduct. (*Id*. at 6).

In response, Plaintiff argues that the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") has never adopted the apex doctrine, and this district court has never applied it to bar a deposition. (ECF No. 94 at 4). Plaintiff asserts that, even under the apex doctrine, Smith has personal knowledge of relevant facts that cannot be easily obtained through other means. (*Id*. at 5). Plaintiff cites various examples of Smith's direct and personal involvement in investigating and reforming Marshall's Title IX office, including emails that Smith sent concerning problems with the Title IX administration, Smith's removal of Title IX Coordinator Debra Hart from her position and nationwide search for her replacement, commission of a Title IX task force with which he was personally involved, establishment of a direct reporting line from the Title IX office to Smith's office with monthly check-ins, and Smith's statements to the Marshall University Board of Governors about the progress of the Title IX task force. (*Id*. at 6-7).

Plaintiff explains that she requested documents from Smith in discovery, and her counsel requested such information in another case to which she received such heavily redacted documents that it was an exercise in futility. (*Id*. at 9). Plaintiff took Rhodes's deposition. (*Id*.). However, she states that Rhodes was unable to answer many of the questions, and the deposition did not eliminate the need for Smith's testimony. (*Id*.).

3

Plaintiff also requested a Rule 30(b)(6) deposition, but she maintains that a corporate representative would not be able to provide the same comprehensive personal knowledge of the task force and reform process as Smith. (*Id.*). Finally, from a proportionality standpoint, Plaintiff argues that she should not be required to depose multiple individuals, such as numerous people from the task force and Title IX administration, to obtain information that can be acquired from a single individual who has chosen to make himself the linchpin of Title IX reform at Marshall University. (*Id.*).

Defendant replies that Smith's testimony concerning reform of the Title IX office is irrelevant to this case because this matter was not handled by the Title IX office. (ECF No. 103 at 2). According to Defendant, the alleged sexual assault occurred at a private, off-campus apartment. (*Id.*). Plaintiff reported it to the police, who sent a copy of the report to the University. (*Id.*). Plaintiff supposedly never made any complaint or report to the University herself. (*Id.*). After receiving a copy of the police report, the Evaluation Committee determined that the matter did not fall within the purview of the Title IX office because it did not occur within an education program or activity. (*Id.* at 2-3). Defendant claims that Plaintiff has not adduced any facts that this is a Title IX case; as such, a deposition of Smith regarding Title IX office reform is unsupported. (*Id.* at 4). Also, Defendant asserts that Plaintiff's Fed. R. Civ. P. 30(b)(6) deposition notice lists the same topics about which she wants to depose Smith. (*Id.* at 4-5). Thus, Defendant argues that there are less intrusive means to obtain the information sought. (*Id.* at 6).

### III. <u>Applicable Law</u>

Rule 26(b)(1) of the Federal Rules of Civil Procedure defines the scope of discovery in this action. It states, in relevant part:

4

> [U]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

"Relevancy under this rule has been broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party." *Becton, Dickinson & Co. v. BioMedomics, Inc.*, No. 5:20-CV-536-FL, 2021 WL 3864476, at *3 (E.D.N.C. Aug. 30, 2021) (citations omitted). "Relevance is not, on its own, a high bar." *Ceresini v. Gonzales*, No. 3:21-CV-40 (GROH), 2022 WL 628520, at *3 (N.D.W. Va. Mar. 3, 2022) (citation omitted). As stated in the rule, information "need not be admissible in evidence to be discoverable." *Id.* (quoting Fed. R. Civ. P. 26(b)(1)). "Federal courts have long understood that relevancy for discovery purposes is defined more broadly than relevancy for evidentiary purposes." *Id.*

Even if seeking relevant information, the discovery request must be proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). "Although Rule 26(b)(1)'s relevance inquiry does not, itself, pose a 'high bar,' its proportionality requirement mandates consideration of multiple factors in determining whether to allow discovery of even relevant information." *Ceresini*, 2022 WL 628520, at *3. The factors include: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* (quoting Fed. R. Civ. P. 26(b)(1)).

## IV.   **Discussion**

Defendant seeks a blanket protective order prohibiting Smith's deposition under Federal Rule of Civil Procedure 26(c). The rule provides that, upon a showing of good cause, the court may issue an order protecting a party or person "from annoyance, embarrassment, oppression, or undue burden or expense" by doing one or more of the following:

(A) forbidding the disclosure or discovery;

(B) specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery;

(C) prescribing a discovery method other than the one selected by the party seeking discovery;

(D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;

(E) designating the persons who may be present while the discovery is conducted;

(F) requiring that a deposition be sealed and opened only on court order;

(G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and

(H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

Fed. R. Civ. P. 26(c).

Under Rules 26(b)(2)(C) and 26(c) of the Federal Rules of Civil Procedure, "the court has broad authority to limit discovery and prescribe alternative discovery mechanisms," *Minter v. Wells Fargo Bank, N.A.*, 258 F.R.D. 118, 124 (D. Md. 2009); in other words, to determine "when a protective order is appropriate and what degree of

6

protection is required." *Furlow v. United States*, 55 F. Supp. 2d 360, 366 (D. Md. 1999) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)). As a general rule, protective orders "should be sparingly used and cautiously granted." *Baron Fin. Corp. v. Natanzon*, 240 F.R.D. 200, 202 (D. Md. 2006) (quoting *Medlin v. Andrew*, 113 F.R.D. 650, 653 (M.D.N.C. 1987)).

A court's customary reluctance to prohibit discovery is heightened in the case of a motion seeking to prevent the taking of a deposition. *Minter*, 258 F.R.D. at 125 (citing *Static Control Components, Inc. v. Darkprint Imaging*, 201 F.R.D. 431, 434 (M.D.N.C. 2001)) ("By requesting the Court to prohibit plaintiff from deposing a witness, defendant ... assumes a heavy burden because protective orders which totally prohibit a deposition should be rarely granted absent extraordinary circumstances."). The reasons for this are simple. Usually, the subject matter of a deposition is not well-defined in advance; thus, the need for prospective relief is more difficult to discern than in other methods of discovery. In addition, objections can be asserted and "a motion can be made if any need for protection emerges during the course of the examination;" therefore, a ruling prior to commencement of the deposition is not necessary to achieve a fair result. 8 Wright & Miller, *Federal Practice and Procedure*, § 2037 (3d Ed.). Because the Court can rely on counsel to assert the rights of their clients during a deposition, the burden to show good cause for an order entirely precluding the proposed deposition is especially heavy. *Medlin*, 113 F.R.D. at 653; *Motsinger v. Flynt*, 119 F.R.D. 373, 378 (M.D.N.C. 1988) ("Absent a strong showing of good cause and extraordinary circumstances, a court should not prohibit altogether the taking of a deposition.").

As this Court explained in a previous case, "[t]he 'apex doctrine' applies to a specific subset of deposition notices that demand the appearance of high-level executives

7

or high-ranking government officials." *Cunagin as Next friend of J.C. v. Cabell Huntington, Hosp., Inc.*, No. 3:19-CV-00250, 2021 WL 1518877, at *3 (S.D.W. Va. Apr. 16, 2021). It was developed to prevent a party from harassing or burdening a corporate or government adversary by taking depositions of its apex employees. *Id*. Thus, "the apex doctrine is both an expression of the proportionality requirement found at Federal Rule of Civil Procedure 26(b)(1) and a presumption of good cause for a protective order under Federal Rule of Civil Procedure 26(c)." *Id*. Under the apex doctrine, before proceeding with the deposition of a high-level executive or official, a party must show that the person (1) possesses special or unique information relevant to the issues being litigated, and (2) the information cannot be obtained by a less intrusive method, such as through written discovery or by deposing lower-ranking employees. *Id*. Although the doctrine does not grant free passes to corporate executives or high-ranking officials to escape deposition testimony, it plainly deviates from the long-standing rule that a witness generally cannot escape examination by denying knowledge of any relevant facts, since the party seeking to take the deposition is entitled to test the witness's lack of knowledge. *Id*.

It is important to note that the Fourth Circuit has neither adopted, nor rejected, the apex doctrine. *Id.* at *4; *see* (ECF Nos. 76 at 4, 94 at 4). Accordingly, this Court generally proceeds under a proportionality analysis of Rule 26(b)(2)(C) to evaluate whether a protective order should be granted regarding an apex employee. *In re C. R. Bard, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, No. MDL 2187, 2014 WL 12703776, at *4 (S.D.W. Va. June 30, 2014). Plaintiff seeks to depose Smith because of his alleged personal involvement in Defendant's Title IX policies and administration. She cites Smith's two university wide emails concerning problems with the Title IX administration, appearance at a Title IX campus protest and invitation for the leaders to discuss their

8

concerns with him in his office, removal of Title IX Coordinator Debra Hart from her position and nationwide search for her replacement, commission of a Title IX task force, establishment of a direct reporting line from the Title IX office to his office with monthly check-ins, and his statements to the Marshall University Board of Governors about the progress of the Title IX task force. (ECF No. 94 at 6-7).

These examples, by themselves, do not establish that Smith has *special or unique* information relevant to the issues being litigated, which cannot be obtained through less intrusive methods. In fact, Plaintiff noticed a Rule 30(b)(6) deposition on the same topics which Smith supposedly has unique knowledge. (ECF No. 112). Plaintiff asserts that Smith prompted this deposition by making himself the figurehead of Title IX reform at Marshall. However, the fact that Smith has championed Title IX reform at the university does not mean that he has not delegated the actual tasks relating to Title IX to subordinate employees in his office or other offices at Marshall. In fact, it is far more likely that he has done so. Further, the explanation offered by Plaintiff does not demonstrate to the Court's satisfaction that Plaintiff cannot obtain more complete information using less burdensome and less intrusive methods. For instance, the communications and meetings that Plaintiff cited necessarily involved other individuals, who would presumably also have knowledge regarding these matters.

As explained during the January 29, 2024 hearing on this motion, when balancing the needs of the case, the amount in controversy, the burdens versus the likely benefits of the discovery, and the importance of the discovery in resolving the issues, the Court concludes that the most prudent course is to hold in abeyance the Motion for Protective Order regarding Smith's deposition until Plaintiff has completed the Rule 30(b)(6) deposition. Upon completion of the Rule 30(b)(6) deposition, Plaintiff shall report to the

Court whether she still requires the deposition of Smith. If Plaintiff does feel the deposition is necessary, the Court will schedule a hearing to allow Plaintiff to make a showing that Smith has unique personal knowledge relevant to this case.

For those reasons, and assuming Judge Chambers grants an extension of the deadline for taking depositions, Defendant is **ORDERED** to promptly make Rule 30(b)(6) representatives available to Plaintiff.

The Clerk is instructed to provide a copy of this Order to counsel of record and any unrepresented party.

**ENTERED:** January 31, 2024

_____
Cheryl A. Eifert
United States Magistrate Judge