**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**JANE ROE,**

   **Plaintiff,**

**v.**             **Case No.: 3:22-cv-00532**

**MARSHALL UNIVERISTY
BOARD OF GOVERNORS,**

   **Defendant.**

**<u>MEMORANDUM OPINION AND ORDER</u>**

Pending before the Court is Defendants' Motion for Protective Order Concerning Deposition of Marshall University General Counsel Toney Stroud. (ECF No. 77). For the reasons that follow, the Court **GRANTS** the motion.

**I.**  **<u>Relevant Facts</u>**

Plaintiff asserts that Marshall University ("Marshall") discriminated and retaliated against her under Title IX, 20 U.S.C. § 1681, by not investigating her September 3, 2022 sexual assault and instead punished her under the Student Code of Conduct for underage drinking on the night in question. (ECF No. 34). Plaintiff filed a police report with the Huntington Police Department ("HPD"), asserting that a fellow Marshall student, John Doe ("Doe"), sexually assaulted her, and the HPD sent a copy of the police report to Marshall. (*Id.*). According to Plaintiff, Marshall decided within less than 24 hours to close the Title IX investigation into the assault because it occurred at an off-campus apartment, and Marshall determined that it did not have jurisdiction

under Title IX. (*Id*.). Michaela Arthur, Assistant Director of Student Conduct ("Arthur"), contacted Plaintiff on September 7, 2022, about Plaintiff being a "witness" to a possible violation of the Student Code of Conduct. (*Id*. at 3-4). Plaintiff related the circumstances of the assault to Arthur and informed her that Doe was previously violent toward her and threatened her. (*Id*. at 4). Arthur informed Plaintiff that she was being charged with underage drinking under the Code of Student Conduct. (*Id*. at 5). Arthur further determined that Doe had attacked Plaintiff and was responsible for relationship violence under the Code of Student Conduct. (*Id*. at 6). As punishment, both Plaintiff and Doe were required to complete an alcohol education course, perform community service, and they were placed on probation until December 12, 2022. (*Id*.). Plaintiff's probationary status was documented in her record, and she had to write a "reflection" letter about her conduct. (*Id*. at 5-6). In Count One of the amended complaint, Plaintiff asserts that Defendant violated Title IX, 20 U.S.C. § 1681, by being deliberately indifferent toward unlawful sexual harassment committed upon her by Doe. (*Id*. at 8-9). In Count Two, she asserts that Defendant unlawfully retaliated against her under Title IX for reporting the sexual assault by punishing her and placing her on academic probation. (*Id*. at 11).

## II.   **Motion for Protective Order**

On November 21, 2023, Plaintiff noticed several depositions, including the deposition of Defendant's General Counsel, Toney Stroud ("Stroud"). (ECF No. 69). The deposition was scheduled to take place on December 18, 2023. (*Id*.). On December 11, 2023, Defendant filed the instant motion seeking a protective order to prohibit Stroud's deposition. (ECF No. 77 at 2). In Defendant's view, Stroud does not have any unique personal knowledge about the facts at issue in this case, and any case-related

information that he possesses is protected by the work product doctrine and/or attorney-client privilege. (*Id*. at 3).

In response, Plaintiff asserts that there is ample cause for her to depose Stroud because, in addition to being Defendant's General Counsel, he is also Defendant's Vice President of Strategic Initiatives and has a vital role in developing Defendant's Title IX policies. (ECF No. 100 at 1). Plaintiff concedes that all efforts should be made to avoid deposing Stroud, if possible. (*Id*.). Thus, Plaintiff proposed that the Court hold Defendant's motion for protective order in abeyance until the close of discovery after which Plaintiff would withdraw its deposition notice or provide a substantive response to Defendant's motion for protective order. (*Id*. at 2).

## III.   <u>Discussion</u>

As an initial matter, the Court notes that the deposition deadline expired on January 12, 2024. (ECF No. 49 at 1). Therefore, it is too late for Plaintiff to take Stroud's deposition absent an agreement between the parties or extension of the discovery deadline. However, for the following reasons, even if the parties reach an agreement or seek a Court order to extend discovery, Plaintiff should not be permitted to depose Stroud in this litigation.

Parties are generally permitted to obtain discovery:

[R]egarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). The scope of discovery can be limited by court order. *Id.* Here,

Defendant seeks a protective order pursuant to Federal Rule of Civil Procedure 26(c).

The rule provides that, upon a showing of good cause, the court may issue an order

protecting a party or person "from annoyance, embarrassment, oppression, or undue

burden or expense" by doing one or more of the following:

> (A) forbidding the disclosure or discovery;
>
> (B) specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery;
>
> (C) prescribing a discovery method other than the one selected by the party seeking discovery;
>
> (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;
>
> (E) designating the persons who may be present while the discovery is conducted;
>
> (F) requiring that a deposition be sealed and opened only on court order;
>
> (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and
>
> (H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

Fed. R. Civ. P. 26(c).

The "party seeking a protective order has the burden of establishing 'good cause'

by demonstrating that 'specific prejudice or harm will result if no protective order is

granted.'" *U.S. ex rel. Davis v. Prince*, 753 F. Supp. 2d 561, 565 (E.D. Va. 2010) (quoting

*Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2003)). To ensure that

discovery is sufficient, yet reasonable, district courts have "substantial latitude to

fashion protective orders." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984). A party assumes a heavy burden to establish that a protective order which totally prohibits a deposition should be granted. *Static Control Components, Inc. v. Darkprint Imaging*, 201 F.R.D. 431, 434 (M.D.N.C. 2001). Yet, a request to take the deposition of a party's attorney justifies a departure from the general rule. *Id.* Courts have applied a burden-shifting framework when a party seeks to depose opposing party's counsel. *Id.* The party seeking the deposition must establish the need for the deposition "by demonstrating, among other considerations, that (1) there are no persons other than the attorney available to provide the information; (2) other methods, such as written interrogatories, would not be as effective; (3) the inquiry will not invade attorney-client privilege or work product; and (4) the information is of such relevance that the need for it outweighs the disadvantages and problems inherent in deposing a party's litigation attorney." *Id.*

In this case, Plaintiff's only justification for deposing Stroud is that he exercises significant control over Defendant's Title IX policy and proceedings. (ECF No. 100 at 1). He supposedly established a direct reporting line from the Title IX Coordinator to himself in response to "widespread student outrage regarding problems with Marshall's Title IX administration." (*Id.*). The activities that Plaintiff mentioned appear to be entirely consistent with the functions of a university's general counsel, and it is difficult to envision how any of the information that Stroud could possibly provide on those matters falls outside of the attorney client privilege and/or work product doctrine.

The attorney-client privilege shields from discovery communications between a lawyer and client that are confidential and made for the purpose of securing legal

advice. *United States v. Jones,* 696 F.2d 1069, 1072 (4th Cir. 1982). In addition, information that is documented in anticipation of litigation can qualify as work product. *Nicholas v. Bituminous Cas. Corp.*, 235 F.R.D. 325, 331 (N.D.W. Va. 2006). "Opinion work product," which is defined as "the mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party concerning the litigation" receives the greatest work-product protection. *Id.* at 332 (citing *In re Grand Jury Proceedings,* 33 F.3d 342, 348 (4th Cir.1994)).

Plaintiff claims in her amended complaint that Defendant's Title IX office has been a "disaster" for years, culminating in "a recent series of high-profile lawsuits and media reports." (ECF No. 34 at 1). This provides further evidence that Stroud's involvement in Defendant's Title IX policy and administration was for the purpose of securing legal advice and in anticipation of litigation. Defendant has sufficiently established good cause for a protective order prohibiting Stroud's deposition. It would most certainly concern information that is shielded from discovery pursuant to the attorney-client privilege and/or work product doctrine. Allowing parties to depose opposing counsel's lawyers without a compelling reason would undoubtedly have a substantial chilling effect on counsel's representation of clients and the overall litigation process. Plaintiff has not offered any reasons that she cannot obtain the necessary information from other witnesses or through other discovery methods. She has wholly failed to show that she requires specific, unique information from Stroud that would possibly justify deposing him in this case.

Therefore, the Court **GRANTS** Defendants' Motion for Protective Order Concerning Deposition of Marshall University General Counsel Toney Stroud. (ECF No. 77). Plaintiff is prohibited from taking Stroud's deposition. It is so **ORDERED.**

6

The Clerk is instructed to provide a copy of this Order to counsel of record and any unrepresented parties.

**ENTERED**:  January 31, 2024

Cheryl A. Eifert
United States Magistrate Judge