IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**JANE ROE,**

    **Plaintiff,**

v.                                                   Case No.: 3:22-cv-00532

**MARSHALL UNIVERISTY
BOARD OF GOVERNORS,**

    **Defendant.**

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Marshall University Board of Governors' Motion for Protective Order Concerning Deposition of Marshall University President Brad D. Smith. (ECF No. 76). The Court incorporates by reference the law, findings, and conclusions stated in its prior order concerning this motion. (ECF No. 119). For the reasons that follow, the Court **GRANTS** the motion. (ECF No. 76).

**I.**     **Relevant Facts and Procedural History**

To briefly summarize the facts stated in the Court's prior order, (ECF No. 119), Plaintiff asserts in this case that Marshall University violated Title IX, 20 U.S.C. § 1681, by being deliberately indifferent to her September 3, 2022 sexual assault and retaliating against her by charging her with violating the Student Code of Conduct for underage drinking on the date in question. (ECF No. 34). In December 2023, Defendant filed the instant motion, (ECF No. 76), seeking a protective order under Fed. R. Civ. P. 26(c) to prohibit Plaintiff from taking the deposition of Marshall University President Brad D. Smith ("Smith"). Defendant argued that the Court should apply the "apex doctrine,"

which requires a plaintiff seeking to depose a high-ranking officer of a corporate defendant or government official to show that the deponent has unique or special knowledge of the facts at issue and that plaintiff exhausted less burdensome avenues to obtain the information. (*Id.* at 3-4). In response, Plaintiff argued that the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") has never adopted the apex doctrine, and this district court has never applied it to bar a deposition. (ECF No. 94 at 4). Further, according to Plaintiff, Smith has personal knowledge of relevant facts that cannot be easily obtained through other means. (*Id.* at 5). Plaintiff contended that Smith made himself the figurehead of Title IX reform at Marshall, and he played an integral role in establishing a Title IX task force and involving himself in Title IX matters. Plaintiff wants to depose Smith on those topics.

Upon reviewing the parties' briefs, the applicable law, and the parties' contentions during a telephonic motion hearing on January 29, 2024, the Court concluded that simply because Smith championed Title IX reform at Marshall, he did not necessarily have unique knowledge relevant to the issues being litigated. (ECF No. 119 at 9). To the contrary, it was more likely that Smith had delegated the actual implementation of Title IX reform to employees in his office and other offices at Marshall, and those individuals were better suited to provide the information that Plaintiff sought in discovery. (*Id.*). The Court determined the most prudent course was to hold the motion in abeyance until Plaintiff had completed a planned Rule 30(b)(6) deposition of Defendant, in which Plaintiff intended to query Defendant's designated representatives on the same topics that she sought to depose Smith. (ECF No. 119 at 9-10). Plaintiff was instructed to notify the Court after the Rule 30(b)(6) deposition if she still required Smith's testimony, so that a follow-up hearing could be held, if necessary. (*Id.* at 10).

2

On February 28 and 29, 2024, Plaintiff took the Rule 30(b)(6) deposition of five Marshall University officials, including Smith's Chief of Staff, Virginia Painter ("Painter"), and Bruce Felder from the Department of Human Resources ("Felder"). (ECF No. 174 at 5). At the conclusion of the deposition, Plaintiff promptly notified the Court that she still required Smith's deposition, but she needed the deposition transcripts to establish her point. (ECF No. 163 at 7). Once she received the transcripts, Plaintiff filed a supplemental memorandum on March 28, 2024, renewing her opposition to the motion for protective order. (ECF No. 163). According to Plaintiff, the discrimination and retaliation that she suffered was significantly motivated by explicit and implicit pressure from Marshall's administration, such as Smith, to "solve" the Title IX crisis. (*Id.* at 1). In other words, Plaintiff suggests that her sexual assault was not investigated as a Title IX matter, and she was instead punished by the Office of Student Conduct, as part of a "top down" effort to reduce Title IX cases at Marshall and improve Marshall's reputation. Defendant maintained in its supplemental memorandum that the information sought regarding the Title IX task force was not relevant because the task force was formed after Plaintiff's Student Conduct case was concluded, and it has no relation to Plaintiff's claims. (ECF No. 174 at 2). In Defendant's view, even assuming *arguendo* that Plaintiff sought relevant information from Smith, she had not shown that she could not obtain it through less burdensome and intrusive means. (*Id.* at 1).

On April 12, 2024, the undersigned held a continuation of the hearing regarding the motion for protective order. After reviewing the supplemental memoranda and hearing from the parties, the undersigned **GRANTED** the motion. The undersigned explained that Plaintiff did not identify any proposed information that Smith could provide that was not duplicative or cumulative of other information that Plaintiff had

already obtained in discovery, including in the Rule 30(b)(6) deposition. In this circumstance, allowing Plaintiff to depose Smith would be disproportional to the needs of the case.

## II. Discussion

As the Court previously discussed, the scope of discoverable information under Rule 26(b)(1) of the Federal Rules of Civil Procedure involves an examination of the relevance of the information sought and the proportionality of that information to the needs of the case. Fed. R. Civ. P. 26(b)(1). Relevancy itself is not a high bar, but even relevant information can be limited if the burden of collecting it proves to be disproportional. Proportionality is determined by considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). In addition, under Rule 26(b)(2)(C), the Court must limit the extent or frequency of discovery if it determines that (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1). Fed. R. Civ. P. 26(b)(2)(C).

Furthermore, the Court can issue a protective order prohibiting a deposition under Rule 26(c) of the Federal Rules of Civil Procedure to protect a party or person from undue expense or burden. Fed. R. Civ. P. 26(c). The "apex doctrine" provides that a party cannot take the deposition of a high-ranking executive or official without showing that the person

possesses special or unique information that is relevant to the case and cannot be obtained by less intrusive means. The Fourth Circuit has neither explicitly adopted nor rejected the apex doctrine. Thus, the Court proceeds under a proportionality analysis, considering the federal rules expressed above.

Plaintiff's counsel confirmed during the April 12, 2024 hearing that they seek Smith's deposition regarding three topics:

1. The Title IX task force that was formed at Marshall University.
2. The transition of Debra Hart out of her position as Title IX Coordinator.
3. Smith's personal public relations firm, Terakeet.

All of this information has been obtained through other discovery or is not relevant for the following reasons.

### A. Title IX Task Force

Plaintiff argues that she needs to depose Smith to investigate his reasoning for establishing the Title IX task force and various facts about the task force. This argument is unavailing because Plaintiff has obtained Rule 30(b)(6) testimony concerning why the task force was created and how it functioned. Painter testified that the task force was created to look into concerns raised by students in a "protest" just before Thanksgiving in November 2022 after the publication of a USA Today article. (ECF No. 174-1 at 7, 10). The article addressed the Chase Hardin case. Hardin was accused of sexually assaulting other students attending Marshall University. After his conviction, a USA Today reporter criticized how Marshall's Title IX office handled the complaints made against Hardin. Painter testified as Defendant's designated representative that while Smith suggested a task force, he delegated the creation and management of the task force almost exclusively to Painter: she drafted the emails for Smith's review and signature, selected prospective

members, created and met with the task force, and advised Smith on all matters regarding the task force. (ECF No. 174-1 at 11-13, 19-21, 23). Smith never made a single change to Painter's proposals regarding the creation, substance, or members of the task force. (*Id.* at 26, 28). Painter, as well as the meeting minutes, reports, emails, and other documents, are very clearly the best source of information regarding the task force.

Therefore, although Smith had direct personal involvement in the task force, as Plaintiff argues, he is unlikely to provide any additional information regarding it because nearly everything he learned or did regarding the task force either came through Painter, or occurred in Painter's presence. Painter was adamant that she is the person in the President's Office with the most knowledge regarding the task force, and Smith would not have any information additional to hers. (*Id.* at 11). Painter provided detailed testimony as Defendant's Rule 30(b)(6) designee regarding when and why the task force was created, what the task force did, and how the President's Office responded to the task force's recommendations and implemented them. Plaintiff points to minor discrepancies in information and a few questions that Painter could not answer—such as whether Smith personally picked one of the members of the task force—but Plaintiff fails to show any significant gaps in information that are particularly important to her case. More importantly, Plaintiff does not show any reasonable likelihood that Smith would be able to provide additional substantive information regarding the task force.

It is important to note that Plaintiff's case was handled by Marshall's Student Conduct office, not its Title IX office. While that does not render information about the Title IX office completely irrelevant, it does reduce the importance of the task force to the issues at stake. Plaintiff speculates that her case was delegated to the Student Conduct office to lessen the negative attention on the Title IX office, reduce the number of Title IX

6

cases, and protect Marshall's reputation, but she did not provide any evidence of that to the Court. Likewise, she has not produced any evidence that the task force had involvement in her case or made any decisions related to her assault or discipline. Plaintiff is aware of the members of the task force and can question them—since some were students, this could be done informally. They would have far more knowledge about the task force than Smith, as he did not participate in any of the task force's meetings. Furthermore, Smith denies personal knowledge of Plaintiff's case, denies investigating the matter, and even denies knowing Plaintiff. (ECF No. 174-3). Given that Plaintiff has received the Defendant's official position on the Title IX task force through the 30(b)(6) deposition, and Smith's knowledge would be duplicative or cumulative, the burden and cost associated with compelling his deposition on that topic would be disproportional to the needs of the case.

### B. Debra Hart

Plaintiff also claims to need information from Smith regarding why Hart was transitioned out of her role as Title IX coordinator. Hart was in charge of Title IX and equity programs, but she was eventually moved out of the Title IX role. Plaintiff obtained Rule 30(b)(6) testimony from Painter and Felder that the position previously held by Hart was split in November 2022 into two roles with Hart remaining as the director of equity programs and Jessica Rhodes being appointed as the new Title IX coordinator. Painter testified that administration had multiple discussions over time regarding the weight of responsibility involved in managing both the Title IX and equity programs, concluding that it was too heavy to place on one person. (ECF No. 174-1 at 17). According to Painter, these discussions probably started as far back as the prior administration, well before Smith became President of Marshall University. (*Id.*). However, the change was not

effected until November 2022 because funding was not readily available to split the position into two. (*Id.*). Felder elaborated on the reasoning for the transition, testifying that it was his idea to divide the responsibilities. (ECF No. 174-2 at 4). He stated that he approached Hart in July 2022, when he was promoted to the head of equity programs, and asked her to work solely in his office as he was trying to build a strong team and believed she would be a good fit for that role. (*Id.*). Felder recalled that Hart took about a month to get on board, but eventually, in November 2022, the position was divided into two positions. (*Id.*). Felder admitted that the USA Today article published at that time played a role in expediting the change. (*Id.*). He claimed that the decision had already been made, but the article prompted him to complete the official restructuring of the offices. (*Id.*). Felder informed the Office of the President that he was making that anticipated structural change. (*Id.* at 5). He reiterated that he was the one who made the decision, and the Office of the President formally acquiesced to it. (*Id.*).

Regardless of whether Plaintiff believes Painter and Felder's assertions, she has obtained Defendant's Rule 30(b)(6) testimony regarding when, how, and why Hart was transitioned out of her role as Title IX coordinator. Plaintiff obtained the testimony of the administrator who actually made and effected the change. Therefore, testimony from Smith on this topic would be duplicative or cumulative. Plaintiff has not shown that Smith has any unique information on this topic. From a proportionality standpoint, the burden and cost of deposing Smith on this topic outweigh the minimal relevant information that he likely could provide.

### C. Terakeet

The final reason that Plaintiff wishes to depose Smith concerns Smith's personal public relations firm, Terakeet. Plaintiff indicates that Terakeet took affirmative steps to

affect search results and minimize other media information concerning the USA Today article and the Title IX office as they pertained to Smith and/or his wife. However, even if Terakeet did affect search results concerning Smith, which is likely as Painter testified, none of the actions were performed on behalf of Defendant. Smith and his wife, Alys, have employed Terakeet for two decades to monitor any mention of their names in the press or social media; particularly, regarding issues that might negatively impact their personal reputations. (ECF No. 174-1 at 22, 30). According to Defendant, the Smiths themselves pay for the service, and Terakeet does not monitor Marshall University apart from its connection to the Smiths. (*Id.*). There is no evidence that Terakeet takes, or has taken, any steps specifically designed to protect Marshall's reputation. Moreover, there is no evidence to suggest that Defendant used Terakeet to affect public perception of its Title IX matters or Plaintiff's case. Any effect that Terakeet implemented on media concerning Marshall was incidental to the Smiths, or to Smith's role as Marshall's current president. In other words, Terakeet's actions were taken to protect the Smiths as private individuals. Neither Brad Smith, nor Alys Smith, is a defendant in this case. Information concerning Terakeet is simply not important to the issues at stake in the instant action, or to resolving those issues. Compelling Smith to testify about his long-term, personal public relations firm would be unnecessarily intrusive and unduly burdensome when considering the irrelevance of the topic.

In sum, Plaintiff does not offer any reasons justifying the burden and cost of deposing Smith, the president of a large public university. Plaintiff obtained testimony from Defendant regarding the relevant topics upon which she seeks to depose Smith. She has not shown any special, additional, or unique information that Smith possesses on any of those topics. Therefore, after thoroughly considering the facts and arguments asserted

9

by the parties and the relevant law, the motion for protective order, (ECF No. 76), is **GRANTED**. Plaintiff is prohibited from taking Smith's deposition in this matter.

The Clerk is instructed to provide a copy of this Order to counsel of record and any unrepresented party.

**ENTERED:** April 17, 2024

_____
Cheryl A. Eifert
United States Magistrate Judge